(Cuyahoga County, Ohio, Probate Court.)

IN RE ESTATE OF C. H. SEYMOUR, DECEASED.

---

*Attachment of property in hands of administrator under special order of probate court—Obstruction of order—Seizure under color of attachment, does not exempt from placing officer in contempt, etc.*

The execution of a writ of attachment, sworn out by the creditor of an estate, by the sheriff or other officer, whereby assets of an estate, held by an administrator under special order of the probate court, to take an inventory and convert the same into money to pay the debts of the estate, are wrested from the administrator, against his protest and by force, is such a rescuing of property from an officer holding the same by virtue of a special process of a court, and obstructing the execution of said process, so as to constitute the act of the attaching officer a technical contempt of the court under whose orders the administrator is acting.

(Decided February 10, 1896.)

---

WHITE, J.

A motion was made in this court, on the 6th day of February, 1896, to require F. W. Leek, sheriff of Cuyahoga county, to show cause why he should not be attached as for contempt of court. The motion is verified and sets up the fact that J. O. Raeder, administrator with the will annexed of Charles H. Seymour, says: "In the action of the Co-operative Stove Company against Charles H. Seymour, executor of the last will and testament of C. H. Seymour, deceased, commenced in the court of common pleas of Cuyahoga county on the 5th day of February, 1896, brought on a contract claimed to have been made by said C. L. Seymour with the Co-operative Stove Company, said Leek, as such sheriff, after being notified that the property hereinafter mentioned was in the exclusive possession of the defendant as administrator, and after being forbidden to do the same, forcibly broke open the doors of the store-room in which was the personal property of said estate, in possession of the mover as such administrator, and took exclusive possession of the same under a writ of attachment issued in said case, based on the alleged misconduct of said C. L. Seymour, and took exclusive possession, and thereby prevented him from taking an inventory thereof, as by the order of this court he was bound to do, and from closing up the business carried on in said store-room, as by this court he was ordered to do."

There is no doubt about the facts in this case. An order of attachment was issued, under the statute providing for attachments, upon affidavit of an creditor, by the clerk of the court of common pleas, and placed in the hands of the sheriff, and in virtue of that writ, with knowl-

edge of the fact that this property belonged to the estate of C. H. Seymour and as such was in the hands of J. O. Raeder, administrator with the will annexed—being notified and warned that the property was held by him under a special order of the probate court, directing him to take an inventory of the property, to sell the same and settle with the creditors, and to pay all the expenses and debts of the estate, nevertheless forcibly ejected the administrator from the premises, turned out his employes, and took possession of this property vi et armis. And the question now is, whether he was, in so doing, guilty of a contempt of this court.

There is only one ground upon which it can be claimed that he was guilty of such contempt, and that is the grounds provided in section 5640 of the Revised Statutes of Ohio, under chapter 4, title 1, division 7, providing for proceedings in contempt of court; and that section provides:

"A person guilty of any of the following acts may be punished as for a contempt:

"1. Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment or command of a court or an officer.

"2. Misbehavior of an officer of the court in the performance of his official duties, or in his official transactions.

"3. A failure to obey a subpoena duly served, or a refusal to be sworn, or to answer as a witness, when lawfully required.

"4. The rescue, or attempted rescue, of a person or of property in the custody of an officer by virtue of an order or process of court held by him."

I need not read the remainder of the section. I have now read all the provisions of this section which can possibly bear on this case.

If the sheriff is guilty of any contempt, he is guilty of the contempt of "rescuing property" in the custody of an officer by virtue of an order or process of this court. Now, while this writ of attachment may have been absolutely invalid as a warrant for the sheriff, to seize the property in the hands of an administrator, which is undergoing administration under the law—it being deemed to be property in the custody of the law, and has been so held by innumerable authorities, and has been so held by the court out of which this writ issued—nevertheless, that does not settle the question of whether, where the officer acts under color of such writ, and seizes property in the hands of a general administrator, he was obstructing any process of the probate court, or has so interfered with an officer of the court in the discharge of his duty, as that he may be said to be in contempt of the court. I think that is a very serious question, and in an ordinary case, I would have no hesitancy in finding that, as touching the contempt of the person who acts in good faith, under a writ of that kind, duly issued, under color of which he seizes property, being the assets of an estate in the hands of an ordinary administrator, and in no sense executing any special order of the court, however illegal it would be, he would not be guilty of any contempt of court. To so hold would be a far fetched proposition. But that is not the question here; and it will be time enough to pass on such a state of facts when it arises.

In the first place, the person who is obstructed in the exercise of his duties, must be an "officer of the court." Now, an administrator is not an "officer of the probate court." The very nature of his appointment—the very nature of his authority, and the source of his authority, do not at all constitute him an officer under the special orders of the probate court. He may be, in a general way, in his official conduct somewhat subject to the orders of the probate court. While the probate court, under its general jurisdiction, may "direct his conduct," and require him to "settle his accounts," he is not a special officer of the probate court, in the same sense

as a receiver. A receiver is an officer of the court. An administrator is a very peculiar and very different kind of trustee. He is not under the control of the court—he can reject or allow claims without any order of the court; he is not, in a sense, an officer of the court like a master in chancery, or a person under the special order of the court. A receiver is subject to the orders of the court—he is the hand of the court; but an administrator is an independent officer, deriving his authority from the law, and exercising it by reason of the law. He is the representative of the decedent—he takes his place; he stands in the commercial world as the decedent, performing his contracts, taking into his possession all the property of the estate, and dealing with it as the law directs, and not as the probate court specifically directs. He is not, therefore, such an officer of the court that it can be said, with any degree of reasonableness or justice, that the obstruction of the administrator in the discharge of his duties, is a contempt of the probate court. Therefore, in order to find that the sheriff here has committed a contempt, the court must find that this administrator is charged with a special duty. That in fact he holds the special warrant of the probate court to do some special and particular thing with this estate; and is in so far clothed with the express authority of the court. Now, what are the fcts? C. L. Seymour was qualified four years ago, under the will of C. H. Seymour, as executor. He took out letters testamentary. A part of the property of the estate was a store, which was in operation at the time of the death of the decedent—a mercantile business. And in the discharge of his duty, under the will, the executor was charged with the duty of conducting that business until a certain event should occur—so long as it should be found profitable, or until a minor child, who was then about sixteen years old, should become twenty-one years of age. In the conduct of that business it is said debts were contracted. Among others the debt of this creditor, he Co-operative Stove Company.

Not long since a motion was heard in this court to remove this executor for misfeasance in office, stating that he failed to do certain things that the will required him to do, and had caused losses to come to the estate by reason of failure to properly conduct this business. That motion was disposed of by being overruled, but the court appointed, to act with this executor, Mr. J. O. Raeder, as administrator, giving him the same functions and qualities that an administrator with the will annexed ordinarily has. The court required both of these representatives of the decedent to qualify by giving bond—the will not requiring the executors to give any bond. The executor, C. L. Seymour, not giving any bond, officially resigned, leaving all the property in charge of J. O. Raeder, at the time this writ was taken out. The court, in addition to ruling upon the motion for removal of C. L. Seymour, ordered C. L. Seymour and J. O. Raeder, executor and administrator with the will annexed, co-operating therein, to proceed with all proper dispatch to wind up this business, to take an inventory of the condition of this mercantile business, as part of the estate, liquidate and sell it in the best manner possible, and to pay the debts. And the administrator, Raeder, was in the discharge of that duty, under this special order, at the time this property was seized. That makes a very different case from the ordinary operations of an administrator in settling an estate, and if this act of the sheriff was in any sense contemptuous, it was because it obstructed the administrator with the will annexed in the discharge of that special duty. Did he do that? What is a contempt? It does not necessarily imply an offensive or officious, insulting interference with the process of the court. It may be entirely reconcilable with the spirit of good faith and fairness, and yet be a

technical contempt of court. The question of the spirit in which the contempt is committed, has to do with the punishment that is to be meted out, if the person is found guilty. It does not have very much to do with the question of whether there has been a contempt committed. Now it cannot be said for a moment that the sheriff intended to disregard or slight, or interfere in the slightest degree, in a contemptious, officious or reckless or wanton way with the proceedings of the probate court or special duty of the administrator, in thus executing this writ of attachment. I cannot find there that there was any element of insult or wanton or officious misconduct on the part of the sheriff in executing this writ. He did what he supposed the exigencies of his writ required—took possession of the property—turned out the administrator, and in so doing broke in a door and got possession of the property. But without any element or circumstance of insult or disregard of the authority of the probate court. I understand, at first, that he was not notified that the property was in the hands of the administrator, and he, for the time being, desisted from taking possession. I have no doubt he notified the creditor that he would not do that without a bond of indemnity, and I presume afterwards got a bond of indemnity. Such bond does not enlarge the official duty, nor take away the discretion of the officer in the exercise of his duty. It ought never to give warrant for an officer to exceed the legitimate exigencies of his writ. In taking such bond he probably concluded that he could seize this property. In doing that he committed a techical contempt of court. There is no question at all about the absolute invalidity of an attachment to take property out of the hands of an administrator. If the law allowed that to be done, in one case, it would be done in hundreds of cases, and the administrator would do nothing else but defend against such suits. The court cannot tolerate such practice. It would render it absolutely impossible for this court to administer, in a reasonable and just way, the interests of persons interested in estate.

As I understand it, the sheriff has now surrendered possession of the property to the administrator. But whether that is done or not, the least that the court can do here, in settling the question of law, as to the right of the sheriff to take property out of the hands of this administrator, I must find him to be technically in contempt of court, and I must say that he must pay the costs of this motion, and order him to release the attachment or show cause why the same is not done, if not already done.